## UNITED STATES v. McKAY et al.

(District Court, D. Nevada. September 4, 1924.)

No. 6125.

1. Intoxicating liquors ☞249 — Commissioner without power to cancel search warrant after prosecution based thereon has been commenced in District Court.

After a commissioner has issued a search warrant, it has been executed, and an information charging violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), based on the evidence obtained thereunder, has been filed in the District Court, the commissioner is without power to quash the warrant on a traverse, then made for the first time, of the grounds on which it was issued.

2. Intoxicating liquors ☞249 — Prohibition agent may execute search warrant.

A prohibition agent is authorized to execute a search warrant issued under National Prohibition Act, tit. 2, § 2 (Comp. St. Ann. Supp. 1923, § 10138½a).

3. Intoxicating liquors ☞249—No fixed time after sale within which search warrant must be issued.

There is no fixed time after a sale of liquor within which a search warrant may be issued, and an affidavit charging a sale on premises described 12 days previously *held* sufficient basis for a warrant to search the premises for liquor.

**4. Names ⊗═20—Person may change his name at will, if without fraudulent intent.**

Under the common law a person may change his name at will, if not done with a fraudulent purpose.

**5. Searches and seizures ⊗═3—That name signed to affidavit is fictitious not ground for quashing search warrant.**

That the name signed to an affidavit for a search warrant is fictitious is not ground for quashing the warrant, if supported by the facts disclosed by the affidavit.

**6. Searches and seizures ⊗═3—Issue on affidavit for search warrant must be taken before commissioner.**

The grounds on which a search warrant was issued must be controverted before the commissioner issuing the same, as authorized by Espionage Act, tit. 11, § 15 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼o), before the record· is filed with the clerk of the court having jurisdiction of the offense in respect to which the warrant was issued, as required by ·title 11, § 17 (section 10496¼q), otherwise, the right is lost.·

Criminal prosecution by the United States against James C. McKay and Florence McKay. On motion of· defendants to review orders of United States commissioner. Denied.

George Springmeyer, U. S. Atty., and Charles A. Cantwell, Asst. U. S. Atty., both of Reno, Nev., and ·George A. Whiteley, Asst. U. S. Atty., of Ely, Nev.

Hoyt, Norcross, Thatcher & Woodburn, of Reno, Nev., for defendants.

FARRINGTON, District Judge. Defendants have filed a motion asking a review of the orders made by United States Commissioner Warren on an attempted traverse of the grounds on which a search warrant had been issued by the commissioner, authorizing the prohibition director and the ·prohibition agents for Nevada, or· either or any of them, to search the premises known as James McKay's place in Reno, Nev. The affidavit for the search warrant .was dated December ·14, 1923, and signed "Frances Hall." Search was made December 16th, and a large amount of liquor seized.

: In the affidavit affiant states that on or about December 2, 1923, she purchased from Mrs. James McKay on said premises intoxicating liquor containing one-half of 1 per cent. or more of alcohol by volume, and fit for use as a beverage, and that she then and there observed on said premises a large quantity of such liquor, which was then and there stored for the purpose of ·sale. The warrant was executed by one James Robb, general prohibition agent. January 8th the affidavit, search warrant, and· return 'thereon were filed in this court. December 27, 1923, an information was filed charging defendants with the possession of whisky, wine, and beer on or about December 16, 1923, ·and averring that they were then maintaining a common nuisance on said premises. On the same day, December 27th, defendants were arrested and brought into the District Court for arraignment. Not until 2 days later, and 13 days or more after the search warrant had been executed, did the defendants present to the commissioner their traverse of the search warrant. In it they controverted and denied each and every of the grounds set forth and contained in said affidavit, and in the search warrant issued in pursuance thereof. The matter came on to be heard before the commissioner January 4th, 1924: The commissioner declined to grant the relief prayed, because the case was no longer' within her jurisdiction.

[1] The failure of defendants to demand an investigation of the grounds on which the search warrant issued for more than 13 days after its date and execution, and until after an information had been filed in the United States District Court, raises a serious question as to the power of the commissioner to act further in the matter. Defendants had certainly been afforded ample time within which to notify the commissioner and the district attorney that the grounds on which the search warrant was based were disputed. It is wholly inconsistent with recognized rules of legal proce-·dure that a commissioner, after a case has been removed from his jurisdiction, can determine what evidence may and what may not be presented in court. The information charging defendants· with a violation of the National Prohibition Act had been filed in court. The filing of that document was directed by the court after reading the affidavit of Prohibition Agent Smith, in which it was stated that in company with Agents Robb, Gloss, and Charlton he had searched said premises December 16, 1923, and had found therein whisky, wine, and beer. This affidavit was the evidence on which the court acted.

Can it be contended that the commissioner, after the information had thus been filed, had the power to suppress the proof on which it was based, and on which the court acted? If the commissioner has such power, when does the right to exercise it cease? Can he thus act during or after the trial on the information in the District Court? These questions answer themselves. · A person from whose possession property is taken in execution of a search warrant has

the undoubted right to avail himself of the remedies provided in sections 15 and 16, title 11, of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼o, 10496¼p), in so far as they are not modified or withdrawn by section 25, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m), provided he acts with reasonable diligence, and before the court takes jurisdiction.

[2] The objection that the officers designated in and to whom the search warrant was addressed were not authorized under the law to execute it is not well taken. Raine v. United States (C. C. A.) 299 Fed. 407; United States v. American Brewing Co. (D. C.) 296 Fed. 772–776; United States v. Montalbano (D. C ) 298 Fed. 667; United States v. Keller (D. C.) 288 Fed. 204; United States v. Daison (D. C.) 288 Fed. 199; United States v. Syrek (D. C.) 290 Fed. 820. According to the affidavit for search warrant, the sale of intoxicating liquor occurred December 2d; but the affidavit was not sworn to until December 14th, 12 days later. It is argued that the sale on the 2d is not evidence of possession 12 days later.

[3] In section 11, title 11, of the Espionage Act (section 10496¼k), it is provided that "a search warrant must be executed and returned to the judge or commissioner who issued it within 10 days after its date; after the expiration of this time the warrant, unless executed, is void." The absence of such a limitation as to the lapse of time between the purchase of liquor and the making of an affidavit indicates that in the opinion of the Congress this was a matter which should be left to the discretion of the judge or commissioner, who determines whether there is or is not probable cause. There can be no hard and fast rule fixed by courts to fit every such situation, under all circumstances. Each case must depend upon its own facts. The person or persons who are charged with having whisky in their possession, the quantity of liquor, and the place where it is kept, may all be taken into account, as well as the alleged sale, and the lapse of time.

Obviously contraband goods are more likely to remain for some time if stored by their owner, a substantial citizen, in his own warehouse on the outskirts of a city, than if concealed in a cabin by an unknown stranger. In United States v. Casino (D. C.) 286 Fed. 976, cited by defendants, the affidavit showed that an automobile containing cases labeled whisky was driven into a garage; there was no allegation that the auto came out empty, nor was there any showing that the whisky, if the cases contained any, belonged to the defendant, the keeper of the garage; for all that appeared, the auto may have stopped for oil, gas, air, water, or repairs.

In the instant case the liquor is alleged to have been actually sold by one of the defendants, and to have been stored in defendants' residence for the purpose of sale. It was for the commissioner to determine whether the showing was sufficient to establish probable cause for believing that intoxicating liquors still were on the premises, and that such premises were still being used for the unlawful sale of liquor December 14th, when the search warrant was placed in the hands of the officers.

[4] It is positively asserted by defendants that the name subscribed to the affidavit is fictitious, and the allegation that a sale of intoxicating liquor was made on the premises of James C. McKay and Florence McKay on the 2d day of December, 1923, was and is false. Under the common law a man can change his name at will, provided it is not done with a fraudulent purpose; he may sue and be sued by such adopted name, and will be bound by any contract into which he enters in his adopted name. This is true in the absence of a restrictive statute, and is not abrogated by the fact that a procedure is provided by statute for the change of one's name. 20 Standard Ency. 250; In re McUlta (D. C.) 189 Fed. 250; Linton v. Bank (C. C ) 10 Fed. 894.

[5] Furthermore, when the affidavit was signed and sworn to before the commissioner, it became her duty to weigh the evidence to ascertain whether it established probable cause for issuance of the warrant. This she did, and in so doing exercised a judicial function. The affidavit disclosed facts which, if true, were ample to support a search warrant.

[6] Conceding that Frances Hall is an assumed name, that fact cannot justify an order quashing a search warrant otherwise regular on its face. Toole v. State, 170 Ala. 41, 51, 54 South. 195. The record disclosed no reason why the search warrant should be quashed, or the evidence obtained by the officers in its execution, suppressed. The defendants, having failed to notify the commissioner that they denied the grounds on which the search warrant was issued during the time the matter was pending before the commissioner, have lost their right to the relief provided in the Espionage Act.

The suggestion that this court now follow that procedure is not one I can adopt. The sections in question read as follows:

"Sec. 15. If the grounds on which the warrant was issued be controverted, the judge or commissioner must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and subscribed by each witness.

"Sec. 16. If it appears that the property or paper taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the judge or commissioner must cause it to be restored to the person from whom it was taken; but if it appears that the property or paper taken is the same as that described in the warrant and that there is probable cause for believing the existence of the grounds on which the warrant was issued, then the judge or commissioner shall order the same retained in the custody of the person seizing it or to be otherwise disposed of according to law."

Sections 15 and 16, title 11, Espionage Act.

Section 17 (section 10496¼q) requires the judge or commissioner to annex the affidavits, search warrant, the return or inventory, and the evidence, and file the same, with a copy of the record of his proceedings, with the clerk of the court having power to inquire into the offense. The only officer who is authorized under sections 15 and 16 to take testimony in relation to the grounds on which the search warrant is issued is the judge or commissioner who originally issued the warrant.

I find nothing in the statute which authorizes such an investigation by the District Court; accordingly defendants' motion is denied.